UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> VARIOUS JOHN AND JANE DOES, and VARIOUS XYZ CORPORATIONS, <br><br> Defendants. | Civil Action No. <br><br> **H-09- 958** <br><br> **Filed Under Seal** |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff World Wrestling Entertainment, Inc. ("WWE"), by and through its undersigned attorneys, alleges the following for its Complaint against Defendants John and Jane Does and XYZ Corporations.

### NATURE OF THE CASE

1. This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and related state law claims for trademark infringement and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's registered and unregistered trademarks and service marks. WWE brings this action to (i) protect its reputation for distributing and selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming public by Defendants; and (iii) avoid thousands of irretrievably lost sales.

2.      To achieve these goals, WWE, through an Ex Parte Motion for a Temporary Restraining Order ("TRO"), Order for Seizure of Counterfeit Marked Goods and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Ex Parte Motion") filed concurrently herewith and incorporated herein by reference, seeks an order from this Court authorizing the seizure of:

> (i) all counterfeit merchandise bearing any of WWE's registered and/or unregistered marks, any confusingly similar marks, or the names or likenesses of any of its wrestlers found in the possession, custody or control of Defendants;
>
> (ii) any means of making such counterfeit merchandise; and
>
> (iii) all records documenting the manufacture, receipt, distribution, offering for sale or sale of such counterfeit merchandise.

WWE seeks to have all such counterfeit merchandise and associated documents and materials seized until a hearing can be held before this Court to determine the disposition of any such goods, materials and/or documents seized.

3.      WWE also seeks a TRO and a preliminary and permanent injunction barring Defendants from unlawfully infringing WWE's intellectual property rights during WWE's 2009-2010 nationwide series of live entertainment events by manufacturing, distributing and/or selling counterfeit merchandise bearing any of WWE's registered or unregistered marks, the names or likenesses of its wrestlers, or any other word or name that is likely to cause confusion or mistake or to deceive. WWE's 2009-10 series of live events includes its WrestleMania® XXV weekend, which consists of various events taking place in the Houston, Texas area from April 2, 2009 through April 6, 2009, including, but not limited to, (1) WWE's Fan Access live event at Reliant Center on April 2-6; (2) WWE's Hall of Fame Reception and Induction Ceremony live event at the Toyota Center on April 4; (3) a charity golf event; (4) the main WrestleMania® XXV live

event at Reliant Stadium on April 5; and (5) a WWE Raw® live event at the Toyota Center on April 6 (collectively, the "WrestleMania® XXV Weekend Events").

## PARTIES

4. Plaintiff WWE is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

5. Defendants John and Jane Does and XYZ Corporations, whose precise identities are not yet known to WWE, are individuals and entities who, upon information and belief, have been doing business, continue to do business, or will be doing business in the Southern District of Texas.

6. Upon information and belief, all Defendants are acting in concert and active participation with each other in connection with the wrongful acts alleged below.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the Defendants because they reside in and/or have transacted or will be transacting business in this State, and have caused harm or tortious injury in this State by acts within this State. Upon information and belief, all Defendants are individuals and entities who will be present in the Southern District of Texas in connection with the claims asserted below and/or who, at all times relevant hereto, have done business, continue to do business, or will be transacting business in the Southern District of Texas.

8. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b). This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), with respect to the state law claims asserted herein.

9. This Court is an appropriate venue for this action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to plaintiff's request for relief will occur in this district.

## FACTUAL BACKGROUND

A. <u>WWE's Business And Marks</u>

10. Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has provided to the public live and televised wrestling and entertainment events and services (the "WWE Wrestling Services") under the service mark WORLD WRESTLING ENTERTAINMENT®. WWE is also the owner of all right, title and interest in the names, likenesses and rights of publicity for its current wrestlers. In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under the WORLD WRESTLING ENTERTAINMENT® mark and numerous other service marks and trademarks (collectively, the "WWE Marks"). A listing of the WWE Marks, both those registered with the United States Patent and Trademark Office and those unregistered but exclusively owned by or licensed to WWE, is set forth as <u>Exhibits 1</u> and <u>2</u> hereto, respectively. Among the marks most important to this action are:

| Mark | U.S. Trademark Registration Nos. |
| --- | --- |
| WORLD WRESTLING ENTERTAINMENT | 2,772,677; 2,757,600; 2,757,599; 2,754,499 |
| WWE and WWE logos | 2,772,683; 3,056,074; 2,799,228; 2,751,437; 2,751,436; 2,765,751; 2,757,597; 2,754,495; 2,757,596 |
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859 |

4

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise.

11. WWE promotes live wrestling entertainment events on a regular basis in most major cities in the United States and in many other cities throughout the world ("Live Events"). WWE does this by organizing a series of Live Events throughout the country. Most major U.S. cities will have a WWE Live Event appear in their city at least once or twice a year. WWE Live Events include all of the following types of programs: pay-per-view events; live, nationally-televised shows; television tapings; and non-televised events, known as "house shows." In addition to generating revenues through ticket sales and promoting the up-coming pay-per-views, WWE sells a significant portion of WWE Merchandise at its Live Events.

12. WWE presents regular World Wrestling Entertainment programs featuring live wrestling events on a pay-per-view basis fourteen (14) times a year. One of these pay-per-view events is called "WrestleMania®" and typically sells for $54.95 per view. WrestleMania® is WWE's showcase live event and most lucrative pay-per-view program. The remaining thirteen WWE pay-per-view events, with various names, sell for $39.95 each.

13. WWE's pay-per-view events are the biggest wrestling events of the year for WWE and offer an occasion for, inter alia, determining and crowning WWE's various champions and/or elucidating the various story lines developed by WWE throughout the year. These live pay-per-view events are extensively promoted and widely attended and viewed.

14. For example, on March 29, 1998, WWE held its annual WrestleMania® pay-per-view event, WrestleMania® XIV, at the Fleet Center in Boston, Massachusetts. WWE Merchandise sales at WrestleMania® XIV set a record for the Fleet Center for sales per capita. Similarly, WWE held WrestleMania® XVI at the Pond in Anaheim, California, on April 2,

2000, again setting a venue record for merchandise sales per capita and drawing a pay-per-view audience of over 800,000 viewers.

15. In 2008, WWE's WrestleMania® XXIV, held at the Citrus Bowl in Orlando, Florida, yielded spending of approximately $7 million dollars in tickets, merchandise and retail. Moreover, an independent third-party estimated that WWE's WrestleMania® XXIV generated approximately $50 million in revenues for the Orlando, Florida area, which hosted the event. It has been estimated that a similar amount of revenue will be generated for the Houston, Texas area as a result of hosting the WrestleMania® XXV Weekend Events.

16. In addition to its pay-per-view Live Events, WWE currently presents three one and two-hour weekly WWE programs called "RAW®", "ECW®" and "SmackDown®" that feature wrestling entertainment programming every Monday, Tuesday and Friday nights nationwide on the USA TV cable television network, the SciFi Channel and the MyNetworkTV cable television network, respectively. RAW® is cablecast live from various WWE events around the country, and ECW® and SmackDown® are cablecast from pre-recorded live WWE events. WWE also presents other weekly wrestling entertainment programs on the USA TV cable television network, namely, "A.M. Raw®".

17. At and in connection with its Live Events, as well as in retail stores nationwide and via mail order and on-line catalogs, WWE sells a large variety of the WWE Merchandise featuring the WWE Marks. The WWE Merchandise typically displays prominently the name and logo of the company, the WWE Marks, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs. Examples of the WWE Merchandise are listed in Exhibit 3 attached hereto, but include, without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, sunglasses, key rings, action figures, posters, and DVDs.

**B.      Counterfeiting At Previous Live Events**

18.     For many years, WWE has sold and has licensed a limited number of third parties to sell the WWE Merchandise at and in connection with its Live Events. Typical WWE Merchandise sold at a WWE Live Event might refer specifically or generally to the WORLD WRESTLING ENTERTAINMENT, the WWE, the WWE logo, the date and/or location of the show or event, and/or one or a number of other WWE Marks included in Exhibits 1 and 2 hereto.

19.     WWE Merchandise is of the highest quality and grade. These genuine goods are currently being sold only at authorized locations throughout the United States including, but not limited to, the house show arenas and Live Event venues, and retail stores in the Southern District of Texas.

20.     Based upon information and belief, as well as investigation into the matter, WWE has learned that Defendants, alone and in conjunction with other, similarly situated individuals and entities, are selling goods of inferior quality to those sold, or licensed for sale, by WWE at or near the Live Events. These goods, which are marked with imitations or counterfeits of the WWE Marks, include, inter alia, T-shirts, sweatshirts, caps, hats, posters, and other souvenirs, merchandise and memorabilia ("Counterfeit Merchandise").

21.     For example, at WWE's WrestleMania® XXIV event, held on March 30, 2008, in Orlando, Florida, WWE encountered an overwhelming number of individuals distributing and selling Counterfeit Merchandise. With the aid of an ex parte seizure order granted by the United States District Court in the Middle District of Florida, WWE was able to gain some measure of control over such counterfeiting by seizing more than 1,500 articles of counterfeit merchandise at the WrestleMania® XXIV event alone.

22. At no time has WWE authorized Defendants to manufacture, distribute, offer for sale or sell any Counterfeit Merchandise, nor any WWE Merchandise or goods or materials bearing the WWE Marks that were not specifically licensed and approved by WWE, at Live Events or elsewhere.

23. As described more fully in the Declaration of Donna Goldsmith attached to WWE's Ex Parte Motion and incorporated herein by reference, WWE has undertaken, and continues to undertake significant, extensive measures to guard against the unauthorized distribution and sale of Counterfeit Merchandise at Live Events.

24. Based upon its investigation into the matter, and as described more fully in the Declaration of Donna Goldsmith, and in the Declaration of Richard S. Hering also attached to WWE's Ex Parte Motion and incorporated herein by reference, WWE has observed that the design, materials and quality of most of the Counterfeit Merchandise being distributed and sold at WWE Live Events throughout the United States was poor and uniform from event to event and city to city. WWE has concluded that Defendants distributing and selling Counterfeit Merchandise are part of a concerted operation that travels from venue to venue selling unauthorized Counterfeit Merchandise likely acquired from common sources of manufacture. Many of the individual Defendants sell the same Counterfeit Merchandise in different cities. Groups of these individuals travel together from event to event, including in the Southern District of Texas.

25. Thus, without the aid of a federal court order authorizing seizure of Counterfeit Merchandise, WWE is unable to combat the network of individuals and entities distributing and selling unauthorized Counterfeit Merchandise at WWE's nationwide series of Live Events, thus rendering WWE effectively unable to protect its rights, and the rights of the consuming public,

against the unauthorized and unlawful distribution and sale of Counterfeit Merchandise at Live Events.

26.     As demonstrated by the Declaration of Richard S. Hering, throughout the past several years of WWE Live Events, WWE has encountered numerous sellers of Counterfeit Merchandise at various locations throughout the United States, including in the Southern District of Texas.

27.     During the course of WWE's enforcement of Seizure Orders entered by the District Court of Massachusetts, the Middle District Court of Florida, and the Eastern and Southern District Courts of New York, and prior similar orders, WWE seized thousands of counterfeit T-shirts, caps, posters, pictures and other items of Counterfeit Merchandise marked with imitations of the WWE Marks. As a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to avoid lost sales in excess of $500,000, as well as irreparable injury to WWE's reputation and goodwill with the consuming public.

28.     Pursuant to past Seizure Orders, WWE posted bond and proceeded at all times with the utmost caution in seizing only those goods that WWE's security team determined to be Counterfeit Merchandise. WWE enforced the Seizure Orders in a manner designed to protect its trademarks and service marks without compromising the rights of the Defendants in those actions.

29.     Many of the individuals served under these prior Seizure Orders refused to identify themselves, refused to accept service, or both. Moreover, none of the Defendants in those actions came forward with objections to the court. Such behavior is typical of counterfeiters who distribute and sell unauthorized merchandise at live entertainment events.

30. The Seizure Orders issued in the past enabled WWE to effectively police distribution and sale of Counterfeit Merchandise throughout WWE's series of Live Events. The Defendants' conduct, however, represents a continuing problem, not yet abated, and the only effective relief available to WWE is the ex parte seizure process.

31. Without the ability to seize Counterfeit Merchandise at and near the Live Event venues during its 2009-2010 series of live events, including, but not limited to, at or near the WrestleMania® XXV Weekend Events in Houston, Texas from April 2-6, 2009, WWE stands to lose untold and irrecoverable sums in merchandise sales and suffer incalculable, irreparable damage to its reputation and goodwill in addition to the harm such counterfeiting will cause to the consuming public.

C. **Expected Counterfeiting At WrestleMania® XXV Weekend Events in Houston and Elsewhere**

32. WWE's WrestleMania® XXV Weekend Events are scheduled for April 2-6, 2009. The events include (1) WWE's Fan Access live event at Reliant Center on April 2-6; (2) WWE's Hall of Fame Reception and Induction Ceremony live event at the Toyota Center on April 4; (3) a charity golf event; (4) the main WrestleMania® XXV live event at Reliant Stadium on April 5; and (5) a WWE Raw® live event at the Toyota Center on April 6. The 2009-2010 nationwide series of Live Events will proceed throughout the United States according to the schedule attached hereto as Exhibit 4.

33. In connection with its WrestleMania® XXV Weekend Events and its 2009-2010 nationwide series of Live Events, WWE has advertised and promoted heavily, and will continue to advertise and promote heavily, the WWE Marks in interstate commerce.

34. As the foregoing demonstrates, the only effective means of protecting WWE's trademarks and service marks from unlawful counterfeiting by Defendants at Live Events is

10

through the ex parte seizure process, which provides WWE with the ability to fight against unlawful counterfeiting. To maintain any meaningful defense against the unlawful distribution and sale by Defendants of Counterfeit Merchandise at Live Events, which is an ongoing problem inherent in the live entertainment industry, WWE must be allowed to proceed with the ex parte seizure process.

35. Indeed, Defendants are habitual "repeat offenders" who refuse, even when apprehended, to identify themselves or accept service, much less appear in court in connection with the seizure of their unlawful goods. Aware of the illegality of their activities, these individuals and groups, if caught, will quickly hide or dispose of their Counterfeit Merchandise, or load it into a waiting vehicle and lock the vehicle or drive it away.

36. Defendants are typically street peddlers, without offices, identification, licenses or addresses. In this manner, they can avoid having to respond to an ordinary civil lawsuit and thus are essentially immune from an injunction unless it is accompanied by authority to seize Counterfeit Merchandise.

37. For example, at WWE's WrestleMania® XXIV event, WWE served approximately 10 individuals and seized approximately 1,500 items of Counterfeit Merchandise. Additionally, many other counterfeiters who had goods seized either refused to identify themselves or accept service. None of those individuals served came forward to respond formally in court.

38. Clearly, the Defendant bootleggers will continue, undaunted, to attempt to peddle Counterfeit Merchandise at WWE's Live Events, and WWE's only means of keeping their conduct under control is through the ex parte seizure process.

39. Based upon the foregoing, and based upon its experience enforcing earlier Seizure Orders, WWE believes and therefore avers that Defendants follow WWE's Live Events from city to city, throughout the country, selling Counterfeit Merchandise. Defendants constitute bootlegging rings that operate in this District by obtaining Counterfeit Merchandise from a small number of manufacturers.

40. On information and belief, Defendants will continue to attempt to sell Counterfeit WWE Merchandise at Live Events during the 2009-2010 nationwide series, including at the WrestleMania® XXV Weekend Events. Indeed, WWE has recently encountered bootleggers at various cities, including San Antonio, Texas, that are already selling counterfeit WrestleMania® XXV t-shirts. Photographs of the counterfeit t-shirts are attached hereto as Exhibit 5.

41. Ex parte seizure relief thus is essential if WWE is to maintain a defense against and effectively police the unlawful activities of Defendants at the 2009-2010 nationwide series of WWE Live Events, including at the WrestleMania® XXV Weekend Events in Houston. Without such relief, WWE will have no effective remedy against Defendants' continued distribution and sale of Counterfeit Merchandise that infringes WWE's registered and unregistered trademarks and service marks, threatens lost sales in the hundreds of thousands of dollars, and deceives the consuming public into mistakenly believing they are purchasing authorized, licensed, high quality goods.

**D. Irreparable Harm To WWE**

42. Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise will deceive the consuming public into believing that they are purchasing genuine goods which have been manufactured, authorized, or approved by WWE, and will likely cause

confusion and mistake in that consumers are likely to assume that WWE has manufactured, authorized, or approved the Counterfeit Merchandise sold by Defendants.

43. In addition to causing WWE to suffer incalculable, irrecoverable and irreparable lost sales, Defendants' manufacture, distribution and sale of inferior quality Counterfeit Merchandise displaying the WWE Marks will irreparably injure WWE's reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia.

44. Based on WWE's prior encounters with sellers of Counterfeit Merchandise at recent Live Events, other World Wrestling Entertainment events, and in the retail and wholesale distribution context, on information and belief, WWE alleges that, if Defendants are notified that WWE has filed this lawsuit and has filed a Motion for TRO, Defendants will cause the unauthorized Counterfeit Merchandise to be dispersed and, thereafter, sold at other locations on or near the premises of the event arenas or elsewhere with the result that WWE will be unable to obtain an effective remedy for Defendants' wrongful conduct.

## COUNT I
## Trademark Infringement (Registered Marks)

45. Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 44 of this Complaint.

46. The WWE Marks on WWE Merchandise have become well and favorably known to consumers throughout the United States, including Texas, as an indication of goods emanating from or authorized by a single source, i.e., WWE.

47. Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

48. The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial. This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

49. Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT II
### Trademark Infringement (Unregistered Marks) And False Designation Of Origin

50. Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 44 of this Complaint.

51. Defendants' use of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's unregistered trademarks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

52. Defendants' use of the WWE Marks on the Counterfeit Merchandise creates a false designation of origin and a false representation of Defendants' goods, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial. This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

54. Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined, will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT III
### Federal Trademark Dilution

55. Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 44 of this Complaint.

56. As a result of the duration and extent of WWE's use and promotion of the WWE Marks, the WWE Marks are famous and highly distinctive.

57. Defendants are making commercial use of the WWE Marks in interstate commerce.

58. Defendants' use began long after the WWE Marks became famous.

59. Defendants' use of the WWE Marks dilutes the distinctive quality of the WWE Marks by diminishing the capacity of the marks to identify and distinguish WWE's goods and services, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

60. Defendants willfully intended to trade on WWE's reputation and goodwill, and to cause dilution of WWE's famous WWE Marks.

61. Defendants' conduct has caused and continues to cause WWE immediate and irreparable injury. WWE lacks an adequate remedy at law.

## COUNT IV
### Trafficking In Counterfeit Goods

62. Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 44 of this Complaint.

63. Defendants' souvenirs, merchandise, and memorabilia constitute goods bearing counterfeit marks. Defendants have trafficked these goods in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) and unless restrained and enjoined, will continue to traffic these goods, all to Plaintiff's monetary damage and irreparable harm.

## COUNT V
### Common Law Trademark Infringement and Unfair Competition, Under Texas Law

64.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 44 of this Complaint.

65.     The WWE Marks are marks valid at common law.

66.     Defendants' unauthorized use of the WWE Marks is likely to cause confusion, or mistake or to deceive as to the source of Defendants' goods and services, which constitutes trademark infringement and dilution under the common law of Texas and under Tex. Bus. & Com. Code § 16.29.

67.     Defendants' unauthorized use of the WWE Marks constitutes unfair competition under Texas common law and under Tex. Bus. & Com. Code § 16.29.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff World Wrestling Entertainment Inc. respectfully prays:

1.      That this Court grant a temporary restraining order and a preliminary and permanent injunction enjoining Defendants and each of his, her, or their partners, associates, agents, servants, and employees, and all others acting in concert therewith or having knowledge thereof, from manufacturing, distributing, offering for sale or selling Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any other mark, word, or name similar to the WWE Marks in a manner which is likely to cause confusion or mistake or to deceive.

2.      That this Court order that all Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia referring to or bearing any of the WWE Marks or any confusingly

similar marks, found in the possession, custody, or control of Defendants be seized until a hearing can be held before this Court to determine the disposition of any goods so seized.

3. That this Court order the seizure of (a) any means of making Counterfeit Merchandise and (b) records documenting the manufacture, sale, or receipt of things involved in the sale, offering for sale, or distribution of Counterfeit Merchandise until a hearing can be held before this Court to determine the disposition of any goods so seized.

4. That this Court order that (a) all Counterfeit Merchandise, or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any confusingly similar marks, and all plates, molds, matrices, and other means of making the same, found in the possession, custody, or control of Defendants, and (b) any goods seized pursuant to this Court's order shall be delivered up to WWE, or WWE's attorneys pending the outcome of this action.

5. That Defendants be required to account to and reimburse WWE for any and all profits which Defendants have derived from the sale of any Counterfeit Merchandise or any other souvenirs, merchandise, or memorabilia bearing any of the WWE Marks or any confusingly similar marks, and for any and all damages which WWE has sustained by reason of the acts complained of herein, or statutory damages.

6. That Defendants be required to pay treble the amount of any profits derived from the sale of any Counterfeit Merchandise.

7. That this Court award WWE its cost and reasonable attorneys' fees in this action.

8. That this Court grant such other and further relief as it deems just and appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff World Wrestling Entertainment, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

WORLD WRESTLING ENTERTAINMENT, INC.

Dated: March 27, 2009

/s John W. Patton
John W. Patton
Attorney-in-Charge
Texas Bar No. 00798422
S.D. Texas No. 335842
john.patton@klgates.com
**K&L GATES LLP**
*Attorneys for Plaintiff*
1717 Main Street
Suite 2800
Dallas, Texas 75201
Telephone: (214) 939-5500
Facsimile: (214) 939-5849

**K&L GATES LLP**
*Attorneys for Plaintiff*
Curtis B. Krasik
Jerry S. McDevitt
Christopher M. Verdini
Henry W. Oliver Bldg.
535 Smithfield Street
Pittsburgh, Pennsylvania 15222
Telephone: (412)355-6500
Facsimile: (412)355-6501

## VERIFICATION

I am Senior Counsel, Intellectual Property of Plaintiff World Wrestling Entertainment, Inc. The allegations in the foregoing Complaint that relate or refer to World Wrestling Entertainment, Inc. are true to my own knowledge and as to those allegations that relate or refer to Defendants' activities and that are alleged upon information and belief, I believe them to be true. I verify under penalty of perjury that the foregoing is true and correct.

Executed this 24th day of March, 2009 in Stamford, Connecticut.

*L. Dienes-Millen*
Lauren A. Dienes-Middlen
Senior Counsel, Intellectual Property
World Wrestling Entertainment, Inc.